IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| MOTHER DOE and FATHER DOE, on behalf of JOHN DOE., their minor child; | Case No. 3:23-cv-00498 |
| Plaintiffs, | |
| v. | Judge Campbell<br>Magistrate Judge Holmes |
| SUMNER COUNTY BOARD OF EDUCATION D/B/A SUMNER COUNTY SCHOOLS, | JURY DEMAND |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... iii

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL ALLEGATIONS .................................................................................. 2

III.    LEGAL STANDARD ............................................................................................ 3

IV.     ARGUMENT ......................................................................................................... 4

        A.      The Board Did Not Discriminate Against John Doe in Violation of Title
                IX. ............................................................................................................. 4

                1.      The Board Did Not Violate Title IX Based on Its Conduct Before
                        the Incident (Count One). ........................................................... 4

                        a.      The Board did not maintain a policy of deliberate
                                indifference to reports of sexual misconduct which created
                                a heightened risk of sexual harassment that was known or
                                obvious. ............................................................................ 5

                        b.      Noncompliance with Title IX regulations or grievance
                                procedures does not, by itself, establish a Title IX violation. ........ 7

                2.      The Board Did Not Violate Title IX Based on Its Conduct After
                        the Incident (Count Two). ........................................................... 7

                        a.      The incident did not constitute sexual harassment. ...................... 8

                        b.      The claimed sexual harassment was not sufficiently severe,
                                pervasive, and objectively offensive to be "actionable." ............... 9

                        c.      The Board's response to John Doe's complaint was not
                                clearly unreasonable in light of known circumstances. ............... 11

        B.      The Board Did Not Violate John Doe's Fourteenth Amendment Rights
                Pursuant to § 1983. ................................................................................. 14

                1.      The Board Did Not Violate the Equal Protection Clause by Failing
                        to Train Its Employees (Count Three). ..................................... 14

                2.      The Board Did Not Violate the Equal Protection Clause by Its
                        Deliberate Indifference to Ongoing Harassment (Count Four). ............. 15

C.     The Board Did Not Discriminate Against John Doe in Violation of Title VI of the Civil Rights Act (Count Five). ........................................................... 16

     1.     The Alleged Incidents of Racial Harassment Were Not So Severe, Pervasive, and Objectively Offensive as to Deny John Doe Equal Access to Education. ............................................................... 17

          a.     The alleged incidents of racial harassment were not severe, pervasive, and objectively offensive. ............................................ 18

          b.     The alleged incidents of racial harassment did not deny John Doe equal access to an educational program or activity. ......................................................................... 19

     2.     The Board Was Not Deliberately Indifferent Because Its Response to the Allegations of Racial Harassment Was Not Clearly Unreasonable in Light of Known Circumstances. ................................... 20

V.     CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................................3, 4, 5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................................3

*Brooks v. Skinner,*
139 F. Supp. 3d 869 (S.D. Ohio 2015) ...................................................................17, 19

*Bryant v. Indep. Sch. Dist. No. 1-38 of Garvin Cnty.,*
334 F.3d 928 (10th Cir. 2003) .................................................................................16, 18, 19

*Cleveland v. Blount County School District 00050,*
No. 05-380, 2008 WL 250403 (E.D. Tenn. Jan. 28, 2008)....................................................19

*Stiles ex rel. D.S. v. Grainger Cnty., Tenn.,*
819 F.3d 834 (6th Cir. 2016) .......................................................................................15

*Davis v. Monroe County Board of Education,*
526 U.S. 629 (1999).......................................................................................... *passim*

*Doe A v. Plainfield Cmty. Consol. Sch. Dist., 202,*
No. 21-C-4460, 2023 WL 2428870 (N.D. Ill. Mar. 9, 2023) ....................................................6

*Doe I on Behalf of Doe II v. Huntington Indep. Sch. Dist.,*
No. 9:19-CV-00133, 2020 WL 10317505 (E.D. Tex. Oct. 5, 2020) ........................................6

*Doe on Behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.,*
35 F.4th 459 (6th Cir. 2022), *request for reh'g en banc denied, cert. denied* ......................4, 5

*Doe v. Claiborne Cnty. Tenn.,*
103 F.3d 495 (6th Cir. 1996) ...........................................................................12, 14, 15

*Doe v. Forest Hills Sch. Dist.,*
No. 1:13-cv-428, 2015 WL 9906260 (W.D. Mich. Mar. 31, 2015) ........................................12

*Doe v. Galster,*
768 F.3d 611 (7th Cir. 2014) ...........................................................................17, 18, 19, 20

*Doe v. Hamilton Cnty. Bd. of Educ.,*
329 F.Supp. 3d 543 (E.D. Tenn. 2018)...........................................................................8, 11

*Doe v. Herman*,
  No. 3:20-cv-00947, 2021 WL 1967558 (M.D. Tenn. May 17, 2021) ....................................16

*Doe v. Plymouth-Canton Cnty. Sch.*,
  No. 19-10166, 2022 WL 1913074 (E.D. Mich. June 3, 2022) .................................................7

*Doe v. Univ. of Ky.*,
  959 F.3d 246 (6th Cir. 2020) ........................................................................................7, 11, 13

*Feucht v. Triad Loc. Sch. Bd. of Educ.*,
  425 F.3d 914 (S.D. Ohio 2019)..........................................................................................11

*Foster v. Bd. of Regents of Univ. of Mich.*,
  982 F.3d 960 (6th Cir. 2020) .................................................................................................12

*Gabrielle M. v. Park Forest-Chicago Heights, IL Sch. Dist. 163*,
  315 F.3d 817 (7th Cir. 2003) .................................................................................................11

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998).........................................................................................................12, 13

*Heyne v. Metro. Nashville Pub. Sch.*,
  655 F.3d 556 (6th Cir. 2011) .................................................................................................14

*Johnson v. Bredesen*,
  624 F.3d 742 (6th Cir. 2010) .................................................................................................14

*Kollaritsch v. Mich. State Univ. Bd. of Trustees*,
  944 F.3d 613 (6th Cir. 2019) ....................................................................................... *passim*

*M.P.T.C. v. Nelson Cnty. Sch. Dist.*,
  192 F. Supp. 3d 798 (W.D. Ky. 2016) ...................................................................................15

*Maislin v. Tenn. State Univ.*,
  665 F. Supp. 2d 922 (M.D. Tenn. 2009)..........................................................................16, 17

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978).................................................................................................................14

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998)....................................................................................................................9

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*,
  455 F.3d 690 (6th Cir. 2006) .................................................................................................15

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*,
  647 F.3d 156 (5th Cir. 2011) ...................................................................................................8

iv

*Stiles v. Grainger Cnty. Sch.*,
No. 3:13-cv-7-PLR-HBG, 2015 WL 1294168 (E.D. Tenn. Mar. 23, 2015)..........................15

*Tumminello v. Father Ryan High Sch., Inc*.,
678 F. App'x 281 (6th Cir. 2017) .............................................................................8

*Vance v. Spencer Cnty. Pub. Sch. Dist*.,
231 F.3d 253 (6th Cir. 2000) .........................................................................12, 20

*Vidovic v. Mentor City Sch. Dist*.,
921 F. Supp.2d 775 (N.D. Ohio 2013)................................................................15

*Williams v. Port Huron School District*,
No. 06-14556, 2010 WL 1286306 (E.D. Mich. Mar. 30, 2010) ...........................18

*Zeno v. Pine Plains Cent. Sch. Dist.*,
702 F.3d 655 (2d Cir. 2012)...............................................................16, 18, 20

**Statutes**

20 U.S.C. § 1681(a) ......................................................................................4

42 U.S.C. § 1983................................................................................ *passim*

42 U.S.C. § 2000d.......................................................................................16

Title VI of the Civil Rights Act, 42 U.S.C. § 2000(d) *et seq*................................. *passim*

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*........................1, 2, 3, 18

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 3

U.S. Const. Amend. XIV § 1 .................................................................14, 15, 16

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Sumner County Board of Education (the "Board"), by and through counsel, submits this Memorandum of Law in Support of its Motion to Dismiss.

## I.   INTRODUCTION

Federal law does not protect students from commonplace schoolyard altercations. As the Supreme Court emphasized in *Davis v. Monroe County Board of Education*, 526 U.S. 629, 651 (1999), "children may regularly interact in a manner that would be unacceptable among adults." A peer harassment plaintiff must demonstrate that the harassment was discriminatory, the school officials had "actual knowledge" of the harassment, the harassment was "so severe, pervasive, and objectively offensive that it . . . deprive[s] the [students] of access to educational opportunities," and school officials were "deliberately indifferent" to the harassment. *Id*. at 650. As argued below, Plaintiffs' allegations fall far short of meeting these elements. Rather, as alleged, this was an unfortunate prank and act of horseplay among teammates in a high school football locker room. Indeed, if every similar incident in a high school locker room rose to the level of a federal lawsuit, the courts would be inundated with such cases.

In their Complaint, Plaintiffs assert the following claims: (1) the Board violated Title IX based on its conduct *before* the incident (Count One); (2) the Board violated Title IX based on its conduct *after* the incident (Count Two); (3) the Board violated 42 U.S.C. § 1983 based on its failure to train its employees in the proper handling of complaints of sexual harassment (Count Three); (4) the Board violated 42 U.S.C. § 1983 based on its deliberate indifference to ongoing harassment (Count Four); and (5) the Board violated Title VI based on its deliberate indifference to the racial harassment of John Doe (Count Five).

1

Accordingly, because Plaintiffs fail to state a claim against the Board under Title IX, 42 U.S.C. § 1983, and Title VI, the Court should dismiss Plaintiffs' Complaint in its entirety.

## II.  FACTUAL ALLEGATIONS[1]

During the 2022–2023 academic year, John Doe was enrolled as a tenth-grade student at Hendersonville High School ("HHS") in Hendersonville, Tennessee. Compl. ¶ 6.  While at HHS, John Doe was a member of the varsity football team. *Id*. ¶ 21. Coach James Beasley was the head football coach. *Id*. ¶ 28.

On September 29, 2022, Plaintiffs allege that John Doe was sexually assaulted by two teammates before practice in the football fieldhouse. *Id*. ¶¶ 38, 49. Specifically, Plaintiffs allege that after one teammate tackled John Doe to the ground, a group of players pulled down his pants and underwear, while another teammate wiped chocolate pudding inside his buttocks. *Id*. ¶¶ 42–43, 47–48.

John Doe's parents learned about the alleged sexual assault after practice that day. John Doe's mother immediately asked to speak to Coach Beasley and told him about the alleged sexual assault. *Id*. ¶ 62. The following day, on Friday, September 30, John Doe's father went to HHS to speak to Coach Beasley regarding what had happened. *Id*. ¶ 69. After his meeting with Coach Beasley, John Doe's father went to the Hendersonville Police Department to file a report. *Id*. ¶ 78. He was told to contact the Sumner County Sheriff's Department, so he drove to that office in Gallatin, Tennessee and filed a report. *Id*. ¶ 79. The sheriff's department notified HHS's Resource Officer, Officer Johns, about the incident. *Id*. Officer Johns notified HHS's athletic director, Ron

---

[1] All facts as recited and relied upon in this Memorandum derive from the Complaint, and the Board's recitation and reliance upon such information is for the Motion only. Therefore, the Board's recitation and reliance upon such information shall not be construed as the Board's admission of the truth of the information or any allegation contained therein.

Sarver, of the incident that afternoon. *Id*. ¶ 82. Later that afternoon and evening, Office Johns and Mr. Sarver began interviewing players regarding the incident. *Id*. ¶ 84. On Thursday October 6, HHS' Title IX Coordinator, Katie Brown, provided Plaintiffs with a "safety plan" for John Doe, which provided that the "students directly involved" would not be allowed back on the football team for at least that week and that John Doe could report any new incidents. *Id*. ¶¶ 96–99.

On October 10, John Doe's father filed a formal Title IX complaint with the Board "for sexual harassment, bullying, and discrimination related to the incident." *Id*. ¶¶ 117–18. The following month, on November 14, the Board sent Plaintiffs a letter informing them that the Board had conducted an investigation, along with HHS's principal, Bob Cotter, and the findings had been submitted to Dr. Del Phillips, Director of Schools, who had issued corrective action. *Id*. ¶ 126.

John Doe's parents, however, were not satisfied with the Board's response. *Id*. ¶¶ 102–07. At some point thereafter, John Doe left HHS, began homeschooling, and ultimately transferred to a different school. *Id*. ¶ 108. On May 16, 2023, Plaintiffs filed this lawsuit, alleging violations under Title IX and Title VI and constitutional violations under § 1983 against the Board. The Board now seeks dismissal of Plaintiffs' claims.

## III.    LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept well-pleaded factual allegations as true. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To be "plausible," an allegation must do more than present "a sheer possibility that a defendant has acted unlawfully." *Id*. When "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.    ARGUMENT

### A.    The Board Did Not Discriminate Against John Doe in Violation of Title IX.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A school can be liable under Title IX for "subjecting 'students to discrimination where [the school] is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority.'" *Doe on Behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459, 463 (6th Cir. 2022), *request for reh'g en banc denied, cert. denied* (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646–47 (1999)). The standard for liability is high and applies only "in certain limited circumstances." *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 619–20 (6th Cir. 2019) (citing *Davis*, 526 U.S. at 650).

Here, Plaintiffs allege two theories of liability under Title IX: (1) liability for the Board's conduct *before* the incident (Count One), and (2) liability for the Board's conduct *after* the incident (Count Two). Both theories fail to state a claim for relief.

### 1.    The Board Did Not Violate Title IX Based on Its Conduct Before the Incident (Count One).

The Sixth Circuit has found that in order to establish a prima facie Title IX *before* claim in the context of a student-on-student deliberate indifference claim, a plaintiff must show: "(1) a school maintained a policy of deliberate indifference to reports of sexual misconduct; (2) which created a heightened risk of sexual harassment that was known or obvious; (3) in a context subject to the school's control; and (4) as a result, the plaintiff suffered harassment that was 'so severe,

pervasive and objectively offensive that it can be said to [have] deprive[d] the plaintiff of access to the educational opportunities or benefits provided by the school.'" *Doe on Behalf of Doe #2*, 35 F.4th at 465 (citing *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020)). Specifically, the Court noted that "'[b]efore' claims require that the student show that a school's response to reports of sexual misconduct 'be clearly unreasonable and lead to further [misconduct].'" *Doe on Behalf of Doe #2*, 35 F.4th at 465 (citing *Kollaritsch*, 944 F.3d at 622). "Put differently, in a successful 'before' claim, a school's deliberate indifference to known past acts of sexual misconduct must have caused the misconduct that the student currently alleges." *Doe on Behalf of Doe #2*, 35 F.4th at 466.

> a. The Board did not maintain a policy of deliberate indifference to reports of sexual misconduct which created a heightened risk of sexual harassment that was known or obvious.

Here, the Plaintiffs' allegations are not enough to establish that the Board maintained a policy of deliberate indifference to reports of sexual misconduct which created a heightened risk of sexual harassment that was known or obvious. Specifically, the Plaintiffs allege the following in support of their Title IX *before* claim:

- "In the last decade, Hendersonville's athletic department has mishandled and responded with deliberate indifference to numerous incidents of sexual misconduct and racial bullying." Compl. ¶ 20;
- "In addition to the blatant racist remarks, it was common for Hendersonville football players to unexpectedly pull other teammate's pants and underwear down and then whip each other's bare buttocks in the locker room." *Id*. ¶ 30;
- "Whipping teammates' bare buttocks in the Hendersonville locker room was commonplace, often occurring on someone's birthday." *Id*. ¶ 31;
- "Hendersonville football coaches were aware of this common practice and never administered any discipline nor did anything to stop it." *Id*. ¶ 32; and
- "Defendant had actual notice that such conduct was occurring and would likely reoccur within the school system absent any intervention." *Id*. ¶ 33

However, the Court must disregard the above allegations at this stage because they are conclusory. *Iqbal*, 556 U.S. at 678; *see* Compl. ¶¶ 20, 30–32 (Hendersonville's athletic department

has mishandled and responded with deliberate indifference to "numerous" incidents of sexual misconduct; it was "common" for Hendersonville football players to whip each other's bare buttocks; whipping teammates' bare buttocks was "commonplace"; Hendersonville football coaches were aware of this "common practice"). *See also Doe A v. Plainfield Cmty. Consol. Sch. Dist., 202*, No. 21-C-4460, 2023 WL 2428870, at *7 (N.D. Ill. Mar. 9, 2023) (disregarding allegations as conclusory in support of a Title IX *before* claim such as "hazing was 'well-known' by Defendant coaches;" "defendant coaches 'knew' and 'were aware' that 'Code Blue' was a long-standing custom;" "teachers, students, and coaches, and on information and belief authorities . . . also knew about the 'Code Blue' hazing ritual;" "defendant coaches 'were aware of the meaning and prevalence of the 'Code Blue' hazing ritual."); *see also Doe I on Behalf of Doe II v. Huntington Indep. Sch. Dist*., No. 9:19-CV-00133, 2020 WL 10317505, at *5 (E.D. Tex. Oct. 5, 2020) (disregarding allegations that misconduct "was well known"; "perpetuation of a culture in which athletes were protected from allegations of misconduct"; "HISD's failure to address and active concealment of sexual violence.").

Moreover, absent from Plaintiffs' Complaint are any allegations that the Board ignored prior reports of sexual harassment on the football team. There are no allegations that other football players reported sexual misconduct or harassment prior to John Doe's incident or that the Board mishandled any such reports. The conclusory allegations that the "Hendersonville football coaches were aware of the common practice of students pulling each other's pants down and whipping each other's bare buttocks"—without more—are insufficient to establish that Defendant maintained a policy of deliberate indifference to reports of sexual misconduct which created a heightened risk of sexual harassment that was known or obvious.

> **b.** Noncompliance with Title IX regulations or grievance procedures does not, by itself, establish a Title IX violation.

Plaintiffs also try to establish their Title IX *before* claim through various allegations of the Board's noncompliance with Title IX regulations and procedures. For example, Plaintiffs make generalized allegations that the Board failed to adequately train its employees, failed to maintain a compliant grievance process, failed to post its Title IX training materials online, failed to update its sexual harassment policy, failed to educate its student about Title IX, among other allegations. *See* Compl. ¶ 195.

However, even accepting such allegations as true, noncompliance with Title IX regulations and procedures "does not, by itself, establish deliberate indifference or a funding recipient's official decision not to remedy sex-based harassment." *Doe v. Plymouth-Canton Cnty. Sch.*, No. 19-10166, 2022 WL 1913074, at *12 (E.D. Mich. June 3, 2022) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998) (failure to promulgate a grievance procedure is not, in and of itself, discrimination under Title IX); *Doe v. Univ. of Ky.*, 959 F.3d 246, 252 (6th Cir. 2020) (school's noncompliance with its own administrative policies was not deliberate indifference where plaintiff did not allege that school's noncompliance caused further harassment).

Accordingly, the Board is not liable under Title IX for its conduct before the incident, and the Court should grant the Board's Motion to Dismiss as to Count One.

> **2.** **The Board Did Not Violate Title IX Based on Its Conduct After the Incident (Count Two).**

The Sixth Circuit has determined that in order to establish a prima facie Title IX *after* claim in the context of a student-on-student deliberate indifference claim, a plaintiff must show: "(1) an incident of actionable sexual harassment, (2) the school's actual knowledge of it, (3) some further incident of actionable harassment, (4) the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and (5)

the Title IX injury is attributable to the post-actual-knowledge further harassment." *Kollaritsch*, 944 F.3d at 623–24.

a.    <u>The incident did not constitute sexual harassment.</u>

Title IX does not cover each and every instance of student-on-student harassment that likely occurs on a regular basis in most school districts. "[G]eneralized bullying—motivated by personal animus, opportunism or social status—is not the sort of conduct proscribed by Title IX." *Doe v. Hamilton Cnty. Bd. of Educ.*, 329 F.Supp. 3d 543, 557–58 (E.D. Tenn. 2018) (citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)). A Title IX claim is only available to a student that has been "harassed on the basis of his or her sex." *Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 284 (6th Cir. 2017). While courts have found that same-sex sexual harassment is actionable under Title IX, "[t]he offensive behavior, however, must still be based on sex, per the words of Title IX, and 'not merely tinged with offensive sexual connotations.'" *Sanches*, 647 F.3d at 165 (quoting *Frazier v. Fairhaven Sch. Dist. Cmty.*, 276 F.3d 52, 66 (1st Cir. 2002)).

As many courts have acknowledged, not all hazing is actionable sex discrimination under Title IX. Indeed, "hazing by its nature, is primarily motivated by team hierarchy, seniority, or class position (e.g. seniors hazing freshmen), not necessarily by sex." *Hamilton Cnty. Bd. of Educ.*, 329 F. Supp. 3d at 559. Such is the case here. The alleged incident involved teammates pulling John Doe's pants and underwear down and wiping chocolate pudding inside his buttocks while he was pinned to the ground in the team's fieldhouse. Compl. ¶¶ 47–48. While Plaintiffs make the conclusory allegation that this necessarily constituted an act of sexual harassment, the facts as alleged in the Complaint demonstrate otherwise. The teammates involved were starters on the football team and senior to John Doe, who was a sophomore at the time. *Id*. ¶¶ 39, 48, 6. Indeed, the Complaint lacks any allegation or even suggestion that the incident occurred based on John

Doe's sex, as opposed to the fact that he was a more junior, second-string player. Moreover, Plaintiffs note that it was common for HHS football players to "unexpectedly pull other teammates' pants and underwear down and then whip each other's bare buttocks in the locker room." *Id*. ¶ 30. Rather than this being based on sex, this hazing practice "often occur[ed] on someone's birthday." *Id*. ¶ 31. *See Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 81 (1998) (cautioning courts and juries not to confuse "ordinary socializing" such as "male-on-male horseplay" with sexual discrimination).

As such, the facts alleged in the Complaint are insufficient to show harassment based on sex under Title IX.

> b.  <u>The claimed sexual harassment was not sufficiently severe, pervasive, and objectively offensive to be "actionable."</u>

Even if the incident alleged in the Complaint was based on sex, it was not severe, pervasive or objectively offensive so as to constitute "actionable" sexual harassment under Title IX.

For student-on-student sexual harassment to be "actionable" it must be "(a) severe, (b) pervasive, and (c) objectively offensive." *Kollaritsch*, 944 F.3d at 620. "Severe" means "something more than just juvenile behavior among students, even behavior that is antagonistic, non-consensual and crass." *Id*. "Pervasive" means "systemic or widespread." *Id*. Significantly, the Sixth Circuit has found that "it also means *multiple* incidents of harassment." *Id*. (emphasis in original). "[O]ne incident of harassment is not enough." *Id*. As the Court explained, "[t]hat a single incident is insufficient on its own to state a claim correspondingly adds further support to the requirement that at least one more (further) incident of harassment, after the school has actual knowledge and implements a response, is necessary to state a claim." *Id*. at 621. Finally, "objectively offensive" means "behavior that would be offensive to a reasonable person under the circumstances, not merely offensive to the victim, personally or subjectively." *Id*. "Whether

gender-oriented conduct rises to the level of actionable harassment thus depends on a constellation of surrounding circumstances, expectations, and relationships, including but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Id*.

Here, Plaintiffs assert a single incident of alleged sexual harassment. Specifically, Plaintiffs allege that on September 29, 2022, John Doe was assaulted by two teammates before practice in the football fieldhouse. *See* Compl. ¶¶ 38, 49. During that incident, Plaintiffs allege that after one teammate tackled John Doe to the ground, a group of players pulled down his pants and underwear, while another teammate wiped chocolate pudding inside his buttocks. *Id*. ¶¶ 42–43, 47–48. However, the Sixth Circuit was explicit in *Kollaritsch*: "one incident of harassment is not enough" to plead a Title IX claim, because Title IX requires "systemic" harassment. 944 F.3d at 620 (citing *Davis*, 526 U.S. at 652–53). Significantly, the Complaint does not allege further incidents of *sexual* harassment.[2]

In their Complaint, Plaintiffs allege that following the incident in the fieldhouse, John Doe was "ridiculed" and "further humiliated" by his teammates at practice and before the game. Compl. ¶ 56. Plaintiffs further allege that John Doe was "heckled" by students and was told by one student: "I heard you basically got raped yesterday." *Id*. ¶ 58. Plaintiffs also generally allege that the "harassment" against John Doe "continued in the weeks thereafter and even followed him to his new school." *Id*. ¶ 59.

---

[2] In their Complaint, Plaintiffs allege that while John Doe was cleaning himself up in the bathroom immediately following the incident, "upon information and belief, an assault of similar nature happened to another player." Compl. ¶ 55. Even if this incident were true, it does not constitute a "further" incident of harassment under Title IX because it occurred before the school had actual knowledge of the incident involving John Doe. *See Kollaritsch*, 944 F.3d at 621 ("That a single incident is insufficient on its own to state a claim correspondingly adds further support to the requirement that at least one more (*further*) incident of harassment, after the school has actual knowledge and implements a response, is necessary to state a claim.") (emphasis in original).

Yet, these incidents are neither specific nor severe enough to constitute actionable sexual harassment under Sixth Circuit precedent. *See Kollaritsch*, 944 F.3d at 624 (where plaintiff encountered the student who had sexually assaulted her "at least nine times" after he had been disciplined, causing plaintiff to suffer panic attacks, the court found that these encounters did not constitute actionable further sexual harassment); *Univ. of Ky.*, 959 F.3d at 248, 251–52 (where plaintiff reported a rape by two fellow students to the university, after which one of the students "stared at her, stood by her at a party, followed her home, and sat near her in the library," and the other student "stared at her in during their shared classes," court found that these incidents did not "suggest *sexual* harassment, let alone sexual harassment that is of a severe, pervasive and objectively offensive nature"); *Feucht v. Triad Loc. Sch. Bd. of Educ.*, 425 F.3d 914, 931 (S.D. Ohio 2019) (verbal harassment, including a threat to tie up plaintiff and rape her, was not severe, pervasive or objectively offensive enough to be actionable under Title IX). The Complaint also does not allege that Plaintiffs reported any post-incident harassment to school officials or that the school otherwise had notice of such harassment. As such, these incidents cannot support Plaintiffs' Title IX claim. See *Hamilton Cnty. Bd. of Educ.*, 329 F. Supp. 3d at 571.

<blockquote>

c.     <u>The Board's response to John Doe's complaint was not clearly unreasonable in light of known circumstances.</u>

</blockquote>

Even if the incidents in this case could be considered actionable harassment, Plaintiffs' deliberate indifference claim fails because they cannot show that the Board's actions in response to their complaints of alleged sexual harassment were clearly unreasonable or that the Board's response subjected John Doe to further actionable harassment. *See Univ. of Ky.*, 959 F.3d at 251.

A response to a report of sexual harassment, or lack thereof, is considered deliberately indifferent only if it "is clearly unreasonable in light of known circumstances." *Davis*, 526 U.S. at 648. Deliberate indifference "is not a mere reasonableness standard." *Gabrielle M. v. Park Forest-*

*Chicago Heights, IL Sch. Dist. 163*, 315 F.3d 817, 824 (7th Cir. 2003). Indeed, deliberate indifference "does not mean a collection of sloppy, or even reckless, oversights." *Doe v. Claiborne Cnty. Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996). It also does not require that "recipients can avoid liability only by purging their schools of actionable peer harassment." *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000). Moreover, Title IX does not mandate "particular disciplinary action[s]," and the law does not entitle students to a "right to make particular remedial demands." *Davis*, 526 U.S. at 648. To evaluate deliberate indifference, courts are to "ask not whether the school's efforts were ineffective, but whether they amounted to 'an official decision . . . not to remedy the violation.'" *Foster v. Bd. of Regents of Univ. of Mich.*, 982 F.3d 960, 968 (6th Cir. 2020) (quoting *Davis*, 526 U.S. at 648)).

Plaintiffs attempt to establish deliberate indifference based on the Board's investigation of the alleged incident of sexual harassment and the Board's failure to comply with its own internal and Title IX policies and procedures. Both arguments fail.

Deliberate indifference is akin to "an official decision by the recipient not to remedy the violation." *Gebser*, 524 U.S. at 290. As the Supreme Court noted in *Davis*, it is clearly unreasonable, for example, for a school to make no effort whatsoever either to investigate or put an end to [known] harassment." 526 U.S. at 624; *see Vance*, 231 F.3d at 262 (finding deliberate indifference where school conducted no investigation of the parent's detailed complaint filed with Title IX coordinator); *Doe v. Forest Hills Sch. Dist.*, No. 1:13-cv-428, 2015 WL 9906260, at *10 (W.D. Mich. Mar. 31, 2015) (finding deliberate indifference where school delayed investigation and punishment of harassing student pending a police investigation).

Here, the Board promptly investigated Plaintiffs' complaints, and there are no allegations that the Board stopped investigating any complaint. In fact, ***within one day*** of John Doe reporting

the incident, HHS' School Resource Officer, Officer Johns, became involved, HHS' Athletic Director, Ron Sarver, was notified of the incident, and Officer Johns and Mr. Sarver together interviewed several football players regarding John Doe's complaint. *See* Compl. ¶¶ 79, 82, 84. ***Within one week***, HHS' Title IX coordinator, Katie Brown, provided John Doe with a safety plan. *Id*. ¶ 96. The safety plan indicated that any "students directly involved" in the incident would not be allowed on the team "for at least [that] week" and also provided that John Doe could report any new incidents to Coach Lake or Mrs. DeJorge. *Id*. ¶¶ 97, 99.

Following Plaintiffs' formal complaint of a Title IX violation on October 10, the Board ***immediately*** informed additional individuals of the complaint, including Del Phillips, the Board's Director of Schools, Craig Ott, the Board's Assistant Director of Schools for Human Resources, Bob Cotter, HHS' principal, and Jeremy Johnson, Supervisor of the Board and Community Relations. Finally, ***almost within one month*** of the Plaintiffs' formal Title IX complaint, the Board concluded their investigation of the incident. *Id*. ¶ 125. On November 14, Mr. Ott provided Plaintiffs with a letter indicating that he had conducted an investigation of the incident, along with Principal Cotter, and they had submitted their findings to Dr. Phillips, who had "issued corrective action." *Id*. ¶ 126.

Moreover, Plaintiffs' emphasis on the Board's failure to comply with Title IX and its own internal procedures is misplaced. As discussed above, non-compliance with Title IX regulations and procedures does not, by itself, establish deliberate indifference. *Gebser*, 524 U.S. at 291–92. Notably, Plaintiffs do not allege that the Board's noncompliance with Title IX procedures caused John Doe to suffer further harassment. *Univ. of Ky*., 959 F.3d at 252 (school's noncompliance with its own administrative policies was not deliberate indifference where plaintiff did not allege that school's noncompliance caused further harassment). Thus, a school's reasonable response to

alleged harassment does not become "clearly unreasonable" because the school fails to comply with Title IX procedures.

Accordingly, the Board's response to John Doe's complaint was not deliberately indifferent under Title IX. Plaintiffs' Title IX claims fail as a matter of law and the Court should dismiss Count One and Count Two of Plaintiffs' Complaint.

### B.     The Board Did Not Violate John Doe's Fourteenth Amendment Rights Pursuant to § 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011) (citations omitted). The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. "The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

In their Complaint, Plaintiffs allege two theories of liability: (1) the Board violated John Doe's right to equal protection by failing to train its employees on the proper handling of complaints of sexual assault and harassment (Count Three), and (2) the Board acted with deliberate indifference to ongoing harassment (Count Four). Both claims fail as a matter of law.

### 1.     The Board Did Not Violate the Equal Protection Clause by Failing to Train Its Employees (Count Three).

Under § 1983, a plaintiff must show that he has asserted a deprivation of a constitutional right, and that the defendants are responsible for the violation because of an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Claiborne Cnty.*, 103

14

F.3d at 505–06. One way to establish an unlawful policy or custom is to show a policy of inadequate training. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700–01 (6th Cir. 2006) (citation omitted). To succeed on a failure to train claim, a plaintiff must prove the following: (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Id.* Put differently, the failure to train must have been the moving force behind a constitutional deprivation. *See Claiborne Cnty.*, 103 F.3d at 508 ("In addition to showing that the school board as an entity 'caused' the constitutional violation, plaintiff must also show a direct causal link between the custom and the constitutional violation.").

As discussed above, the Complaint fails to support a Title IX claim. Accordingly, the lack of a predicate constitutional violation precludes a finding of liability against the Board based on any alleged failures in its Title IX compliance and training. *See, e.g., M.P.T.C. v. Nelson Cnty. Sch. Dist.*, 192 F. Supp. 3d 798, 810 (W.D. Ky. 2016); *Stiles v. Grainger Cnty. Sch.*, No. 3:13-cv-7-PLR-HBG, 2015 WL 1294168, at *8 (E.D. Tenn. Mar. 23, 2015); *Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp.2d 775, 799 (N.D. Ohio 2013). Accordingly, the Court should dismiss Count Three of Plaintiffs' Complaint.

### 2. The Board Did Not Violate the Equal Protection Clause by Its Deliberate Indifference to Ongoing Harassment (Count Four).

The deliberate indifference standard for establishing a § 1983 equal protection violation in a peer harassment case is "substantially the same" as the deliberate indifference standard applied in Title IX cases. *Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*, 819 F.3d 834, 852 (6th Cir. 2016) (quoting *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 369 (6th Cir. 2005)).

15

As demonstrated above, because Plaintiffs cannot establish deliberate indifference under Title IX, they cannot show deliberate indifference under § 1983. Accordingly, the Court should dismiss Count Four of Plaintiffs' Complaint.

### C. The Board Did Not Discriminate Against John Doe in Violation of Title VI of the Civil Rights Act (Count Five).

Title VI requires that no one "shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied rights of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI applies exclusively to intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) ("§ 601 prohibits only intentional discrimination."). "In the education setting, a school district is liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012); *see also Maislin v. Tenn. State Univ.*, 665 F. Supp. 2d 922, 930 (M.D. Tenn. 2009) (finding "claims of deliberate indifference to student-on-student harassment or hostile environment are actionable under Title VI").[3]

In analyzing Title VI deliberate-indifference claims, courts use the test established by the Supreme Court in *Davis v. Monroe County Board of Education*, 526 U.S. 629, 650 (1999).[4] To

---

[3] The Sixth Circuit has yet to decide whether a school can be liable for deliberate indifference to racial harassment under Title VI. *See Doe v. Herman*, No. 3:20-cv-00947, 2021 WL 1967558, at *4 (M.D. Tenn. May 17, 2021) (citing *Thompson v. Ohio State Univ.*, 639 F. Appx. 333, 342 (6th Cir. 2016) ("Because we find that [plaintiff] has failed to raise a genuine issue of material fact as to whether [defendant] was deliberately indifferent in investigating her claim of racial discrimination, we will assume without deciding that deliberate indifference claims are cognizable for racial discrimination under Title VI.").

[4] While *Davis* involved a Title IX sexual-harassment claim, 526 U.S. at 632–633, courts have used the *Davis* framework in reviewing Title VI claims, noting that Title IX was based on Title VI. *See, e.g.*, *Zeno*, 702 F.3d at 665 n.10; *Bryant v. Indep. Sch. Dist. No. 1-38 of Garvin Cnty.*, 334 F.3d 928, 934 (10th Cir. 2003); *see also Maislin*, 665 F. Supp. 2d at 929.

16

establish a student-on-student harassment claim against a school, a plaintiff must demonstrate the following elements: "(1) the harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the defendant had actual knowledge of the harassment; and (3) the defendant was deliberately indifferent to the harassment." *Maislin*, 665 F. Supp. 2d at 931 (citing *Vance*, 231 F.3d at 258–59 (restating the *Davis* test); *Patterson v. Hudson Area Sch.*, 551 F.3d 438, 444–45 (6th Cir. 2009)). Plaintiffs cannot meet these elements.

### 1. The Alleged Incidents of Racial Harassment Were Not So Severe, Pervasive, and Objectively Offensive as to Deny John Doe Equal Access to Education.

In order to state a Title VI deliberate-indifference claim, a plaintiff must show that the racial harassment was "so severe, pervasive, and offensive" that it "has the systemic effect of denying the victim equal access to an educational program or activity." *Davis*, 526 U.S. at 652. In determining whether the alleged harassment was "so severe, pervasive, and objectively offensive that it could be said to deprive plaintiffs of equal access to educational opportunities, courts look to the nature, frequency, and duration of the harassment, as well as its effect on the victim." *Brooks v. Skinner*, 139 F. Supp. 3d 869, 882 (S.D. Ohio 2015) (citing *Marcum ex rel. C.V. v. Bd. of Educ. of Bloom Carroll Local Sch. Dist.*, 727 F. Supp. 2d 657, 669 (S.D. Ohio 2010) (applying the *Davis* test in the Title IX context)). However, "[f]ederal law does not protect students from commonplace schoolyard altercations, including name-calling, teasing, and minor physical scuffles." *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014). As the Supreme Court noted in *Davis*, "children may regularly interact in a manner that would be unacceptable among adults," including "engag[ing] in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it." 526 U.S. at 651. To be actionable, the harassment

must be serious enough to "den[y] its victims the equal access to education that Title IX [and Title VI are] designed to protect." *Id*. at 652.

        a.      <u>The alleged incidents of racial harassment were not severe, pervasive, and objectively offensive</u>.

Given "how thoughtless and even cruel children can be to one another, the Supreme Court has interpreted both Title VI and Title IX to impose a demanding standard for holding schools and school officials legally responsible for one student's mistreatment of another." *Galster*, 768 F.3d at 613–14 (citing *Davis*, 526 U.S. at 650). Indeed, decisions in which schools have been found liable for harassment under Title VI involve conduct far more severe and far more pervasive than the bullying and harassment alleged in this case.

For example, in *Williams v. Port Huron School District*, No. 06-14556, 2010 WL 1286306 (E.D. Mich. Mar. 30, 2010) (reversed and remanded on other grounds), African American students, parents, and school officials were regularly called racial slurs, including "n------"; posters were left on their lockers with racist messages and death threats, and a "Kill List" was circulated which featured a noose and the names of the plaintiffs. *Id*. at *2–6. In *Zeno v. Pine Plains Central School District*, 702 F.3d 655 (2d Cir. 2012), there was evidence that an African-American student suffered harassment over a three-year period, which included references to lynching, physical attacks that warranted police attention, including instances in which the victim was punched and choked, and verbal abuse, such as "frequent pejorative references" to a person's skin color, including "homey," "gangster," and being called "n-------" every day. *Id.* at 666–67. In *Bryant v. Independent School District No. I-38 of Garvin County*, 334 F.3d 928 (10th Cir. 2003), the allegations of racial harassment included "racial slurs, graffiti inscribed in school furniture, and notes placed in students' lockers and notebooks[, and] where Caucasian males were allowed to wear T-shirts adorned with the confederate flag, swastikas, KKK symbols, and hangman nooses

18

on their person and their vehicles." *Id.* at 932–34. In *Brooks v. Skinner*, 139 F. Supp. 3d 869 (S.D. Ohio 2015), biracial students suffered such pervasive racial harassment from at least fifteen of their classmates over a four-year period, including the frequent use of the word "n-----" by Caucasian classmates, students wearing bracelets that said "n------", students using the "n-word" on the bus, and someone writing "n------" on a desk, that the court concluded that the word "n------" was "ubiquitous" in that school environment. *Id.* at 886. In *Cleveland v. Blount County School District 00050*, No. 05-380, 2008 WL 250403 (E.D. Tenn. Jan. 28, 2008), the harassment included racial graffiti and a plan to pull the fire alarm and shoot all African American students as they exited the building which resulted in police officials being called to the school. *Id.* at *1.

Here, by contrast, the acts of racial harassment alleged by Plaintiffs fall far short of the standard of "severe, pervasive, and objectively offensive" established by the above cases. John Doe was not the subject of death threats, frequent racial slurs such as "n-----," racially motivated physical attacks, or repeated references to lynching, the KKK, the confederate flag, or swastikas. Rather—without providing any specifics as to the dates or frequency of the comments—Plaintiffs allege that John Doe's football teammates called him "monkey" and "cotton-picker," and one teammate allegedly referred to himself as John Doe's "master." Compl. ¶¶ 23–24. There is no evidence of any escalation of the alleged harassment or involvement of any other students, teachers, or coaches. Such allegations simply do not rise to the level of Title VI racial harassment. *Galster*, 768 F.3d at 618 ("Federal law does not protect students from commonplace schoolyard altercations, including name-calling, teasing, and minor physical scuffles.").

    b.    <ins>The alleged incidents of racial harassment did not deny John Doe equal access to an educational program or activity.</ins>

John Doe has also failed to demonstrate that the alleged racial harassment had a "concrete, negative effect on his ability to receive an education." *Davis*, 526 U.S. at 653–54. In fact, the only

allegation Plaintiffs make in regard to the alleged racial harassment is that it "caused [John Doe] embarrassment and shame." Compl. ¶ 29.

Thus, Plaintiffs' claims stand in stark contrast to the cases where the harassment was "so severe, pervasive, and offensive" that it had a "systemic effect of denying the victim equal access to an educational program or activity." *Davis*, 526 U.S. at 650; *see, e.g.*, *Zeno*, 702 F.3d at 663 (noting that because of the racial harassment and physical attacks and threats plaintiff endured for over three-and-a half years, the plaintiff opted to graduate early with a limited diploma rather than stay and complete the work needed for a full high school diploma); *Vance*, 231 F.3d at 259 (noting that after plaintiff was subject to both verbal and brutal physical sexual harassment for over three years, including, among other conduct, being stabbed in the hand and having her shirt forcibly yanked off by male students, plaintiff completed her studies at home and was diagnosed with depression); *Galster*, 768 F.3d at 618–19 (finding severe harassment caused a "negative and systemic effect" on the plaintiff's education where she was subjected to multiple incidents of physical violence, including being hit with metal track spikes at a track meet and sticks on the playground which left foot-long welts, that merited police attention and eventually drove her out of the school district).

Accordingly, because the alleged incidents of racial harassment were not so severe, pervasive, and objectively offensive so as to deny John Doe equal access to an educational program or activity, Plaintiffs' claim under Title VI fails and the Court should grant the Board's Motion to Dismiss as to Count Five.

      **2.**     **The Board Was Not Deliberately Indifferent Because Its Response to the Allegations of Racial Harassment Was Not Clearly Unreasonable in Light of Known Circumstances.**

A school can only be found to be deliberately indifferent to discrimination when its response to harassment is "clearly unreasonable in light of the known circumstances." *Vance*, 231

F.3d at 256–57 (quoting *Davis*, 526 U.S. at 648).  Administrators are not required to "remedy" all harassment; they must only respond in a manner that is not clearly unreasonable.  *Davis*, 526 U.S. at 648.  Students are not entitled to particular remedial demands and "courts should not second guess the disciplinary decisions that school administrators make."  *Id.*

Here, there is no evidence that the Board was deliberately indifferent to any complaints of racial harassment. As Plaintiffs admit in their Complaint, neither John Doe nor his parents ever reported the alleged racial harassment to Defendant. *See* Compl. ¶ 29 ("John Doe kept his head down and never reported these racial slurs"). This is simply not a case where the school board failed to act.  Accordingly, the Board is not liable under Title VI, and the Court should grant the Board's Motion to Dismiss as to Count Five.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant the Board's Motion to Dismiss and dismiss Plaintiffs' Complaint.

DATED: July 10, 2023

Respectfully submitted,

s/ *E. Todd Presnell*
E. Todd Presnell (BPR #17521)
Casey L. Miller (BPR #33952)
Tara S. Sarosiek (BPR #34006)
Ocasha Musah (BPR #39224)
BRADLEY ARANT BOULT CUMMINGS LLP
Roundabout Plaza
1600 Division Street
Suite 700
Nashville, TN 37203-0025
Tel.: (615) 252-2355
Fax: (615) 252-6355
tpresnell@bradley.com
cmiller@bradley.com
tsarosiek@bradley.com
omusah@bradley.com

*Attorneys for Defendant, Sumner County Board of Education*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF system on the following:

Hayley H. Baker
HB ADVOCATES PLLC
3820 Charlotte Avenue, Suite 146-24
Nashville, Tennessee 37209

*Attorney for Plaintiffs*

on this 10th day of July, 2023.

s/ E. Todd Presnell
E. Todd Presnell