IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MOTHER DOE and FATHER DOE on behalf of JOHN DOE, their minor child | ) ) ) | Case No. 3:23-cv-00498 |
| v. | ) ) | Judge Campbell Magistrate Judge Holmes |
| SUMNER COUNTY BOARD OF EDUCATION | ) ) ) | |

**O R D E R**

Pending before the Court is Defendant's motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure (Docket No. 22), to which Plaintiffs filed a response in opposition (Docket No. 31) and Defendant filed a subsequent reply (Docket No. 33). For the reasons discussed in more detail below, the motion is GRANTED IN PART AND DENIED IN PART.

As a preliminary matter, the Court notes that there is a lack of consensus as to whether a motion to strike is a non-dispositive matter that may be determined by a magistrate judge or a dispositive matter that must be addressed by a report and recommendation of the magistrate judge to the district judge. A recent decision aptly summarized how courts in the Sixth Circuit have determined if a specific motion to strike constitutes a dispositive motion:

> Courts disagree as to whether a motion to strike is a dispositive motion. "[T]he Sixth Circuit has not addressed this precise issue." *Herrerra v. Michigan Dep't of Corr.*, No. 10-11215, 2011 WL 3862426, at *3 n.1 (E.D. Mich. July 22, 2011). While there is a lack of consensus among the courts, the decision as to whether a motion to strike was dispositive or non-dispositive turns on the particular issue before the court. Where a motion to strike concerns a dispositive issue enumerated in § 636(b)(1)(A), such as striking a pleading, courts have determined the ruling on the motion to be a dispositive one. [*Id.*] (citations omitted) ("Although the Sixth Circuit has not addressed this precise issue, it has held that striking ... a pleading as a discovery sanction is considered a dispositive motion outside of a magistrate judge's authority to hear and determine pursuant to 28 U.S.C. § 636(b)."); *Jeeper's of Auburn, Inc. v. KWJB Enter., L.L.C.*, No. 10-13682, 2011 WL 1899195, at *1 (E.D. Mich. Mar. 16, 2011), report and recommendation adopted, No. 10-13682, 2011 WL 1899531 (E.D. Mich. May 19, 2011) ("A motion to strike an affirmative defense is generally considered to be a dispositive motion . . . .")[.]

> If a motion to strike involves a non-dispositive issue, such as striking portions of a complaint, courts have concluded that it is a non-dispositive one. *MCC Mgmt. of Naples, Inc. v. Arnold & Porter, LLP*, 2008 WL 4642835, at *1 (M.D. Fl. Oct. 20, 2008) ("The Motion to Strike was not itself dispositive of any claim, as it only sought to strike certain paragraphs of the Second Amended Complaint . . . . [T]herefore[,] the magistrate judge properly resolved the motion by order."); *Nat'l Bankers Tr. Corp. v. Peak Logistics, LLC*, No. 12-2268 A/P, 2012 WL 12909869, at *2 n.1 (W.D. Tenn. June 1, 2012) (reasoning "a Motion to Strike paragraphs 41 and 42 of the Complaint, which deal solely with the non-dispositive, evidentiary issue of insurance coverage" was a non-dispositive motion).

*Berkemeier v. City of Jackson*, No. 19-12132, 2022 WL 4378687, at *5–6 (E.D. Mich. Sept. 22, 2022) (quoting *Berry v. Citi Credit Bureau*, No. 18-02654, 2020 WL 4596774, at *3 (W.D. Tenn. Aug. 11, 2020)). Given the lack of direct guidance in the Sixth Circuit, and at least under the present circumstances, the Court concludes that its determination is a non-dispositive one that may be memorialized by memorandum and order.[1]

## BACKGROUND

Plaintiffs – a mother and father filing on behalf of their minor son, John Doe[2] – filed their original complaint on May 16, 2023 and alleged that their minor son experienced an incident of sexual assault while attending football practice at his high school. (Docket No. 1.) Plaintiffs asserted five claims against Defendant, the county board of education, including: (1) violation of Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a) *et seq.*, for failure to comply before the incident; (2) violation of Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a) *et seq.*, for failure to comply after the incident; (3) violation of 42 U.S.C. § 1983 for failure to train employees on the proper handling of complaints of sexual assault and harassment; (4) violation of 42 U.S.C.

---

[1] To the extent that Judge Campbell may disagree with this conclusion, the undersigned Magistrate Judge respectfully submits this as a report and recommendation.

[2] The Court previously granted Plaintiffs' motion for a protective order to proceed pseudonymously. (Docket No. 20.)

§ 1983 for deliberate indifference to ongoing harassment; and (5) violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000(D), for repeated acts of racial harassment. (*Id.* at 32–38.)

After Defendant filed a motion to dismiss the complaint (Docket No. 13), Plaintiffs filed an amended complaint in which they revised some of their allegations and removed their fifth claim for violation of Title VI of the Civil Rights Act for repeated acts of racial harassment. (Docket No. 19.) Despite removing their cause of action for racial harassment from their amended complaint, Plaintiffs included several allegations relating to racial harassment, with which Defendant takes issue in its motion to strike. Those allegations appear in the following numbered paragraphs:

> 44. In the past, Defendant's athletic departments have mishandled and responded with deliberate indifference to numerous incidents of sexual misconduct, hazing, and racial bullying. It is this history which created a culture of "stripping and whipping," with John Doe being among the latest victims.
>
> 48. Here, John Doe is an African American boy who, as a sophomore, played football on Hendersonville High School's predominantly white football team. Sumner County created a football program filled with sexism and racism, so much so that it became the usual rather than unusual behavior.
>
> 49. For example, several of John Doe's white teammates regularly called him "monkey" and "cotton picker," before, during, and after football games and practice. In fact, the same teammate who sexually assaulted John Doe referred to himself, on at least one occasion, as John Doe's "master."
>
> 50. Teammates also regularly called each other derogatory slurs including "n----," "n- ----", "p----", and "b----".[3]
>
> 57. Because of the culture of whipping bare buttocks and physical bullying (and even racial harassment) without consequence, Sumner County created an "anything goes" culture within its football program.
>
> 58. Defendant's prior mishandlings of sexual and racial misconduct, paired with the accepted culture of harassment and bullying on the Hendersonville football team, show that Defendant had actual knowledge of sexual

---

[3] The Court has assumed that the first two slurs are racial in nature and the second two slurs are sexual in nature.

harassment and maintained a policy of deliberate indifference to sexual harassment.[4]

(Docket No. 19 at 7–9.) It is not clear from Defendant's motion if it is seeking to strike the entirety of or only certain portions of the above paragraphs.

## LEGAL STANDARD AND ANALYSIS

At the heart of this dispute is whether references to racial harassment are "redundant, immaterial, impertinent, or scandalous" as those terms are used in Rule 12(f), given that Plaintiffs have removed their claim for a violation of Title VI of the Civil Rights Act for acts of racial harassment, and thus should be stricken from the Amended Complaint. Defendant claims that these racial harassment allegations are unrelated to the remaining claims, all of which focus on sexual assault allegations; that the claims will generate unnecessary pretrial discovery and trial work; and that the claims could bias a jury. In response, Plaintiffs argue that the alleged racial harassment of which they allege was "used for a purpose of power," which is relevant to the sexual assault allegations, and which illustrates the power dynamic that the alleged assailants asserted over John Doe.

The resolution of this issue lies at the intersection of the law applicable to motions to strike under Rule 12(f) and the legal principles governing Plaintiffs' claims – namely violations of Title IX and 42 U.S.C. § 1983. The Court must examine these areas of law to determine whether it is appropriate to strike Plaintiffs' allegations related to racial harassment.

1. **Rule 12(f)**

Rule 12(f) permits the court to strike, at any time, "any redundant, immaterial, impertinent, or scandalous" matter. "An allegation is impertinent or immaterial when it is not relevant to the

---

[4] Defendant also took issue with Paragraph 43 of Plaintiffs' Amended Complaint, but Plaintiffs have "acquiesce[d]" that this paragraph is "unnecessary to the claims in the Amended Complaint" and do not oppose striking the paragraph. (Docket No. 31 at 2.)

issues involved in the action. Scandalous generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F.Supp.3d 772, 801 (E.D. Mich. 2015) (quoting *L & L Gold Assoc., Inc. v. American Cash for Gold, LLC*, No. 09–10801, 2009 WL 1658108, at *1 (E.D. Mich. June 10, 2009)) (internal quotations omitted).

However, generally, "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Williams v. E. I. du Pont de Nemours & Co., Inc.*, No. 2:15-cv-02111, 2016 WL 7192173, at * 2 (W.D. Tenn. Dec. 12, 2016) (quoting *City of New York v. Fedex Ground Package Sys., Inc.*, 314 F.R.D. 348, 354 (S.D.N.Y. 2016)). "[I]t is well-established that the action of striking a pleading should be sparingly used by the courts." *Parlak v. United States Immigr. & Customs Enf't*, No. 05-2003, 2006 WL 3634385, at *1 (6th Cir. Apr. 27, 2006) (quoting *Brown v. Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953)). Striking a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice" and when "the pleading to be stricken has no possible relation to the controversy." *Anderson v. United States*, 39 F. App'x 132, 135 (6th Cir. 2002) (quoting *Brown*, 201 F.2d at 822).

A pleading must cause significant prejudice to be stricken. *Almanza v. Baird Tree Serv. Co.*, No. 3:10-CV-311, 2012 WL 4758276, at *3 (E.D. Tenn. Oct. 5, 2012) ("Generally, motions to strike are disfavored and will be denied unless the allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.") (internal quotations omitted). A motion to strike serves the purpose "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with" them early in the case. *Operating Eng'rs Local 324*

*Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)).

2. **Claims Under Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a) *et seq*.**

The purpose of Title IX is to protect "individuals from discriminatory practices carried out by recipients of federal funds." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998). A school can be liable under Title IX for subjecting "students to discrimination where [the school] is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 646–47 (1999). Title IX was modeled after Title VI of the Civil Rights Act of 1964. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). The two are parallel, though Title VI prohibits race discrimination whereas Title IX prohibits sex discrimination. *Id.*

Plaintiffs allege that Defendant violated Title IX by failing to prevent, investigate, and remedy the sexual harassment of John Doe. (Docket No. 19 at ¶ 194.) Plaintiffs contend that Defendant violated Title IX at two different points in time – before the incident and after the incident. (*Id.* at ¶ 195–208.) A plaintiff must prove different elements with respect to each allegation.

For a Title IX "before" claim, a plaintiff must show that: (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct; (2) which created a heightened risk of sexual harassment that was known or obvious; (3) in a context subject to the school's control; and (4) as a result, the student suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school. *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 35 F.4th 459, 465 (6th Cir. 2022) (quoting *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020)).

For a Title IX "after" claim, a plaintiff must show: (1) an incident of actionable sexual harassment; (2) the school's actual knowledge of it; (3) some further incident of actionable sexual harassment; (4) that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response; and (5) that the Title IX injury is attributable to the post-actual-knowledge further harassment. *Kollaritsch v. Michigan St. Univ. Bd. of Trustees*, 944 F.3d 613, 623–24 (6th Cir. 2019).

3.  **Claims Under 42 U.S.C. § 1983**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

Plaintiffs assert that Defendant violated the equal protection clause of the Fourteenth Amendment of the U.S. Constitution in two ways: first, by failing to train its employees on the meaning of sexual assault and proper handling of complaints of sexual assault and harassment; and second, by its inadequate response to the incident and its deliberate indifference to the ongoing harassment. (Docket No. 19 at ¶¶ 210, 218.) A plaintiff must prove different elements with respect to each allegation.

For a failure to train claim, a plaintiff must show that: (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).

7

For a deliberate indifference claim, a plaintiff must show that: (1) the plaintiff was subjected to discriminatory peer harassment; and (2) school officials responded to the discriminatory peer harassment with deliberate indifference, i.e. in a manner clearly unreasonable in light of known circumstances. *Stiles ex rel D.S. v. Grainger County, Tenn.*, 819 F.3d 834, 854 (6th Cir. 2016). The deliberate indifference standard used for proving a § 1983 equal protection violation in peer harassment cases is "substantially the same" as the deliberate indifference standard applied in Title IX cases. *Id.*

**4.    The Allegations at Issue**

The Court agrees with Defendant that certain of Plaintiffs' allegations regarding racial harassment are "immaterial" to Plaintiffs' two claims under Title IX and two claims under 42 U.S.C. § 1983 and must be stricken. The following of Plaintiffs' allegations speak to Defendant's alleged history of systemic or historic race-related wrongdoings and to instances of alleged racial harassment prior to the incident:

- of "numerous incidents of . . . racial bullying" (Docket No. 19 at ¶ 44);

- of a "predominantly white . . . football program filled with . . . racism" (*id.* at ¶ 48);

- that "white teammates "regularly called [John Doe] 'monkey' and 'cotton picker,' before, during, and after football games and practice" (*id.* at ¶ 49);

- that teammates "called each other derogatory slurs including 'n----,' 'n- ----'" (*id.* at 50);[5]

- that there was a "culture of . . . racial harassment" within the football program (*id.* at ¶ 57); and

---

[5] This paragraph also includes reference to two other slurs: "p----" and "b----." As detailed below, the Court finds that the inclusion of these two slurs should not be stricken because they are more commonly understood to be sexual rather than racial in nature.

8

- that "prior mishandlings of . . . racial misconduct" show that Defendant had actual knowledge of sexual harassment (*id.* at ¶ 58)

However, whether Defendant has such a history or whether such racial harassment occurred has "no possible relation" to whether Defendant failed to prevent, investigate, and remedy the *sexual* harassment of John Doe, as required under Title IX. Title IX is concerned with whether a school was aware of incidents of *sexual* harassment. As stated above, Title VI – and not Title IX – prohibits *racial* discrimination. As Defendant points out, Plaintiffs removed their claim under Title VI when they amended their complaint. Accordingly, any allegations of Defendant's purported history of racial discrimination are immaterial to a claim under Title IX. Furthermore, such allegations would prejudice Defendant and cause the parties to expend additional time and money litigating what is a spurious issue within the meaning of Rule 12(f), given that Plaintiffs have removed their Title VI claim from the complaint.

For these same reasons, the Court also finds that the above quoted allegations have "no possible relation" to Plaintiffs' claims under 42 U.S.C. § 1983. Under these claims, the question is (1) whether Defendant failed to train its employees on the meaning of *sexual* assault and proper handling of complaints of *sexual* assault and harassment, and (2) whether Defendant adequately responded to the incident and was not deliberately indifferent to the ongoing *sexual* harassment. Plaintiffs make no reference to Defendant's alleged history of systemic race-related wrongdoings or particular instances of racial harassment with respect to the § 1983 claims. Furthermore, whether Defendant has such a history, and any allegations of a purported history, are immaterial to the § 1983 claims, which are based on violations of Title IX, not Title VI. This lack of relationship to Plaintiffs' § 1983 claims further bolsters the Court's determination that references to Defendant's allegedly historical racially motivated activity are properly stricken under Rule 12(f) standards.

The Court appreciates Plaintiffs' position that "racial words" or "racially charged words" may demonstrate the "power dynamics" that exist between an alleged abuser and victim when the two are of different races. (Docket No. 31 at 3–4.) Put another way, the Court recognizes that there exists a body of scholarly and sociological work that states that intersections can and do occur between race and sex or gender.[6] However, the Sixth Circuit has not discussed or recognized intersectionality as a legal concept within the purview of Title IX. Accordingly, given the concrete legal distinction between Title VI as a statute related to racial harassment and Title IX as a statute related to sexual harassment, the Court is persuaded that allegations regarding both systemic racial harassment and individual instances of alleged racial abuse are legally irrelevant to a claim under Title IX.

Nevertheless, the Court finds that certain other allegations that Defendant seeks to strike do have a "possible relation to the controversy," and must therefore remain. Plaintiff's allegation:

- that "the same teammate who sexually assaulted John Doe referred to himself, on at least one occasion, as John Doe's 'master'" (*id.* at 49); and

- that teammates "regularly called each other derogatory slurs including . . . 'p----', and 'b----'" (*id.* at ¶ 50)

speak to John Doe's particularized experiences that were sexual in nature.

Although some of these allegations may have some racial implications, they relate to the specific sexual harassment that John Doe claims to have experienced, which makes them plausibly related to the controversy and that is the only minimum the allegations must meet. For example,

---

[6] These intersections can also occur between class and sexuality, in addition to race and sex or gender. *See, e.g.*, Kimberlé Crenshaw, *Demarginalizing the Intersection of Race and Sex: A Black Feminist Critique of Antidiscrimination Doctrine, Feminist Theory and Antiracist Politics*, 1989 U. CHICAGO LEGAL F. 139 (1989); Jennifer C. Nash, *Re-Thinking Intersectionality*, 89 FEMINIST REV. 1 (2008).

10

John Doe's personal experiences are relevant to whether John Doe "suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived [him] of access to the educational opportunities or benefits provided by the school" pursuant to Title IX. *Doe on behalf of Doe #2*, 35 F.4th at 465 (internal quotations omitted). Furthermore, although the word "master" does have obvious connections to slavery and race, the word is also commonly defined as "a person or thing having control or authority" and can have implications relating to sexual activity, all of which would certainly be relevant to Plaintiffs' claims. *See Master*, Oxford English Dictionary, https://doi.org/10.1093/OED/9864196091 (last visited September 27, 2023).

In addition, the Court does not find that the inclusion of the above-quoted allegations in the complaint will result in spurious litigation. These allegations are not solely concerned with the school's knowledge of any race-related discrimination, but rather with statements that were allegedly made to and around John Doe that go directly to his claims related to sexual harassment. Given that courts in the Sixth Circuit should sparingly grant a motion to strike, the Court finds that these two allegations have enough relation to the controversies at issue to remain in the amended complaint.

In addition, to the extent that Defendant is seeking to strike Plaintiffs' allegation that Defendant is "an African American boy" (Docket No. 19 at ¶ 44), the Court will deny such a request. This allegation contains biographical information and its inclusion will not result in spurious litigation or cause prejudice to Defendant.

## **CONCLUSION**

Accordingly, for the reasons stated above, Defendant's motion to strike (Docket No. 22) is **GRANTED IN PART AND DENIED IN PART** and the Court orders as follows:

1. The following words from Plaintiffs' amended complaint (Docket No. 19) that are emphasized in bold and by underlining are stricken:

43. ~~Defendant and Hendersonville High School (hereinafter "Hendersonville") have been accused of allowing, mishandling, and/or enabling complaints of racial bullying, hazing, and sexual harassment. *See e.g.* Complaint, *Hayes v. Sumner County Bd. of Educ.*, No. 3:14-cv-01147 (M.D. Tenn. May 8, 2014).~~

44. In the past, Defendant's athletic departments have mishandled and responded with deliberate indifference to numerous incidents of sexual misconduct, hazing, and ~~racial~~ bullying. It is this history which created a culture of "stripping and whipping," with John Doe being among the latest victims.

48. Here, John Doe is an African American boy who, as a sophomore, played football on Hendersonville High School's **predominantly white** football team. Sumner County created a football program filled with sexism ~~and racism~~, so much so that it became the usual rather than unusual behavior.

49. ~~For example, several of John Doe's white teammates regularly called him "monkey" and "cotton picker," before, during, and after football games and practice.~~ In fact, the same teammate who sexually assaulted John Doe referred to himself, on at least one occasion, as John Doe's "master."[7]

50. Teammates also regularly called each other derogatory slurs including ~~"n----," "n-----",~~ "p----", and "b----".

57. Because of the culture of whipping bare buttocks and physical bullying ~~(and even racial harassment)~~ without consequence, Sumner County created an "anything goes" culture within its football program.

58. Defendant's prior mishandlings of sexual ~~and racial~~ misconduct, paired with the accepted culture of harassment and bullying on the Hendersonville football team, show that Defendant had actual knowledge of sexual harassment and maintained a policy of deliberate indifference to sexual harassment.

2. Plaintiffs shall revise their amended complaint (Docket No. 19) strictly in accordance with the above and file a second amended complaint, with the stricken language omitted but in all other respects identical to the first amended complaint, by no later than **7 days from the date of entry of this order**.

---

[7] The Court has stricken the entire first sentence of this allegation, because simply striking the racial language makes the sentence incomplete.

3. Defendant shall answer or otherwise respond to Plaintiffs' second amended complaint by no later than **14 days after the filing of the second amended complaint**.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge