IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| MOTHER DOE and FATHER DOE, on behalf of JOHN DOE., their minor child;<br><br>Plaintiffs,<br><br>v.<br><br>SUMNER COUNTY BOARD OF EDUCATION D/B/A SUMNER COUNTY SCHOOLS,<br><br>Defendant. | Case No. 3:23-cv-00498<br><br>Judge Campbell<br>Magistrate Judge Holmes<br><br>JURY DEMAND |

**MEMORANDUM IN SUPPORT OF SUMNER COUNTY BOARD OF EDUCATION'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENA**

Pursuant to Federal Rules of Civil Procedure 26 and 45, Sumner County Board of Education (the "Board") submits this memorandum in support of its Motion to Compel (the "Motion"). The Board respectfully requests the Court to compel the production of subpoenaed records that the Tennessee Department of Children's Services ("DCS") objects to providing.

**I.     BACKGROUND**

This lawsuit involves John Doe's claim that he was sexually assaulted in Hendersonville High School's ("HHS") football fieldhouse (the "fieldhouse incident"), resulting in the following civil rights claims against the Board: (1) violation of Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a) *et seq.*, for failure to comply before the incident; (2) violation of Title IX for failure to comply after the incident; (3) violation of 42 U.S.C. § 1983 for failure to train employees on the proper handling of complaints of sexual assault and harassment; and (4) violation of 42 U.S.C. § 1983 for deliberate indifference to ongoing harassment.

In its defense, the Board intends to demonstrate the following: (1) that fieldhouse incident did not occur "on the basis of sex" as a Title IX claim requires; (2) that the Board did not fail to train its employees on the proper handling of Title IX complaints; and (3) that the Board responded properly and was not deliberately indifferent to John Doe's complaint. The DCS records that the board seeks contain information that is relevant to each of these defenses.

The parties disagree over whether the fieldhouse incident was "on the basis of sex," and the Board needs discovery on this point. The Board's position is that the fieldhouse incident did not occur on the basis of sex, did not constitute sexual assault, and did not trigger Title IX. John Doe's testimony confirms this:

> Mr. Presnell: When you were held on the ground, did anyone penetrate your anus?
> John Doe: No.
> Mr. Presnell: Did anyone touch your anus?
> John Doe: No.
> Mr. Presnell: Did anyone make any type of sexual contact with you whatsoever?
> John Doe: I don't . . . know.

(Mot. Ex. 01, John Doe Dep. at 178:1–13).

> Mr. Presnell: Do you have any reason to believe that [alleged assaulter] was trying to have sex with you?
> John Doe: No.

(Mot. Ex. 01, John Doe Dep. at 182:16–18).

Nonetheless, Plaintiff's Complaint describes the incident a sexual assault:

> "Before football practice at Hendersonville High School on an otherwise normal Thursday fall afternoon, John Doe was tackled to the ground and helplessly pinned down by a teammate double his size. John Doe's teammates stripped his pants and underwear down and smeared chocolate pudding inside his buttocks. John Doe's peers crowded around him and cheered during the assault. John Doe was horrified and utterly humiliated. To add insult to injury, John Doe's teammates and peers at Hendersonville High School continued to harass him after the assault. No child should have to endure sexual assault.

(Third Am. Compl. ¶¶ 1–2). The Complaint mentions sexual assault over thirty times.

Plaintiff also claims that the incident triggered Title IX because "John Doe's teammates' objective in assaulting John Doe included diminishing John Doe's masculinity and male identity." (Third Am. Compl. ¶¶ 35–36). However, John Doe testified that neither of his assaulters directed any homosexual slurs towards him or said anything about his masculinity. (Mot. Ex. 01, John Doe Dep. at 181:7–15).

The parties also disagree about the Board's response to the fieldhouse incident. Plaintiff alleges that the Board's investigation of the fieldhouse incident failed to meet Title IX standards, at least in part because the Board failed to adequately train its staff on responding to sexual assault complaints. (Third Am. Compl. ¶¶ 109–130). The Board asserts that it properly responded to incident with a thorough investigation that met the seriousness of the incident, and that staff was properly trained on proper sexual assault investigative procedures.

DCS's investigation centered around the fieldhouse incident and its aftermath—the crux of Plaintiff's Complaint. Shortly after the fieldhouse incident, during the Board's ongoing investigation, Plaintiff's parents reported the incident to DCS. (Mot. Ex. 02, Father Doe Dep. at 190:9–11). Afterward, DCS reached out to at least one Board employee about the incident. (Mot. Ex. 03, Katie Brown Email to DCS). The Board also believes that DCS interviewed at least one HHS employee about the incident. Ultimately, DCS closed its investigation without finding any fault on the Board's part. (Mot. Ex. 02, Father Doe Dep. at 192–193).

To obtain the records related to DCS's investigation into the fieldhouse incident, the Board served a subpoena on DCS. (Mot. Ex. 04, DCS Subpoena). The subpoena asked DCS to produce unredacted records relating to Plaintiff, John Doe. DCS received the subpoena on February 9, 2024. On February 16, 2024, DCS responded with an objection letter offering two bases for its refusal to produce any records. (*See* Mot. Ex. 06). DCS argues Tennessee state

statutes prohibit disclosure of DCS records. *See* Tenn. Code Ann. §§ 37-1-409; 37-1-612; 37-5-107. DCS also claims that the information the Board seeks is irrelevant to this lawsuit. The Board disagrees.

The Board and DCS made several attempts to resolve this dispute. On March 4, 2024, the Board and DCS met and conferred, but were not able to reach a resolution. On March 8, the Board and DCS corresponded about the dispute via email but were again unable to agree. On March 26, there was another unsuccessful attempt via phone to resolve the issue. Further, on March 27, DCS declined to participate in a joint discovery conference because DCS is not a party to this lawsuit. With no resolution, the Board respectfully requests that the Court compel DCS to respond to the Board's subpoena because the requested files contain information relevant to the Board's defenses in this lawsuit.

## II. ARGUMENT

Under the broad federal discovery rules governing this case, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance for discovery purposes is extremely broad." *Abundes v. Athens Food Servs., LLC*, No. 3:14-1278, 2015 WL 13664280, at *2 (M.D. Tenn. Sept. 18, 2015).

The broad discovery rules governing this federal-question case require DCS to produce the subpoenaed information. DCS objects to producing the records based on Tennessee's statutory confidentiality privileges. *See* Tenn. Code Ann. §§ 37-1-409, 37-1-612, 37-5-107. However, given that this is a federal civil rights lawsuit, these state confidentiality privileges must yield to the broad scope of federal discovery. *See Farley v.* Farley, 952 F. Supp. 1232, 1236 (M.D. Tenn. 1997) ("In federal civil rights actions, most courts that have taken up the issues of state privileges have concluded that state law must yield to the federal interest in full disclosure

of all facts bearing upon the denial of federally-guaranteed rights."). Therefore, the Board asks the Court to compel DCS to produce the subpoenaed records. *See* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice of the commanded person, the serving party may move the court . . . for an order compelling production or inspection.").

This Court's authority to "order the production of DCS records and their dissemination in the discovery and trial phases" comes from "the broad discovery and admissibility mandates of federal law and the prioritization of federal privileges doctrine in federal question matters under Rule 501." *Farley*, 952 F. Supp. at 1242. Thus, "the statutory and administrative scheme under Tennessee law ensuring only limited disclosure of child abuse files must yield to a supervening interest in their production and use in federal civil rights actions." *Id.* Courts in this District analyze four factors to determine whether state law privileges apply in federal-question cases: (1) the federal interest in disclosure and the requesting party's need for disclosure; (2) the chilling effect on reports of child abuse; (3) interference with important government processes; and (4) the extent to which state authorities have already waived the privilege. *Id.* at 1239–42.

Applying the *Farley* factors, courts in this District have repeatedly found that the applicable federal rules outweigh the state confidentiality privileges and have ordered DCS to disclose relevant records. *See, e.g.*, *Creger v. Tucker*, No. 3:21-cv-00088, 2022 WL 4474160, at *4 (M.D. Tenn. Sept. 26, 2022) (applying *Farley* to order disclosure of DCS records in § 1983 claim); *Mills v. Barnard*, No. 1:14-CV-150, 2016 WL 4466630, at *4 (M.D. Tenn. Aug. 24, 2016) (applying *Farley* and concluding "that the balance weighs in favor of disclosing [the] DCS records involving the Plaintiff"); *John B. v. Goetz*, 879 F. Supp. 2d 787, 902–03 (M.D. Tenn. 2010) (ordering disclosure of DCS records where a protective order could avoid disclosure outside of the litigation given that the state confidentiality statutes' "primary purpose is the

protection of the privacy of those who are not likely to be parties to a federal civil rights suit"); *Grummons v. Williamson Cnty. Bd. of Educ.*, No. 3:13-1076, 2014 WL 1491092, at *3 (M.D. Tenn. Apr. 15, 2014) (applying *Farley* and holding that "the state interests in confidentiality of child abuse or neglect investigations must yield to the federal interests in securing evidence"); *see also CSZ Transp., Inc. v. Tennessee Dep't of Revenue*, No. 3:13-cv-0911, 2020 WL 13443299, at *4 (M.D. Tenn. Sept. 8, 2020) (Holmes J.) (finding *Farley* factors weighed in favor of disclosure of state government documents because "the policy behind the confidentiality statute at issue does not compel recognition of an evidentiary privilege barring discovery of [requested documents]"). Tennessee state courts have also required DCS to produce unredacted records when relevant to the Board's defenses. *See, e.g.*, Order Granting Motion to Compel Production of DCS Records, *Doe v. Ring*, No. 83CCI-2020-CV-969 (Sumner Cty. Cir. Ct. Feb. 10, 2022 and Mar. 13, 2023), attached to the Motion as collective Exhibit 05.

The *Farley* factors weigh in favor of disclosure here. First, there is a strong federal interest "that litigants be accorded the authority to seek out relevant evidence that they have been granted by the federal rules." *Farley*, 952 F. Supp. at 1239. The records the Board seeks are highly relevant to its defenses. DCS's records regarding John Doe cover the subject of this lawsuit—the fieldhouse incident and its aftermath. Any statements from John Doe about the incident—particularly whether he felt he was "sexually assaulted" or whether his "masculinity was diminished" are key to the Board's defense that the fieldhouse incident did not occur on the basis of sex. Resolving this discrepancy is key to the Board's defense because "generalized bullying—motivated by personal animus, opportunism, or social status—is not the sort of conduct proscribed by Title IX." *Doe v. Hamilton Cnty. Bd. of Educ.*, 329 F. Supp. 3d 543, 557–

6

Case 3:23-cv-00498   Document 60   Filed 05/17/24   Page 6 of 10 PageID #: 768

58 (E.D. Tenn. 2018) (citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)).

In addition, the Board believes that DCS interviewed several other people who would have information relevant to its defenses. DCS interviewed at least one HHS employee during its investigation. Any statements from that employee (or any other interviewed HHS or Board employee) including any statements about his or her prior training in handling sexual assault complaints and his or her actions after John Doe reported this incident, are also relevant to the Board's defense that it properly trained its employees and did not react to the report with deliberate indifference. DCS also spoke to Father Doe and Mother Doe. (*See* Mot. Ex. 02, Father Doe Dep. at 191:1–14). These statements are also relevant to the Board's handling of the matter.

Finally, the Board believes that DCS ultimately closed its investigation without finding any fault on the Board's part. This finding supports the Board's defense that its response to the fieldhouse incident was adequate. Because all this information is relevant to the Board's defenses in this lawsuit, there is a strong federal interest in compelling disclosure. *See Farley*, 952 F. Supp. at 1239 ("Without full and fair disclosure of relevant proof, the public is likely to lose confidence in the administration of justice by the federal courts.").

The second *Farley* factor also supports disclosure. There is no concern that disclosure of these records will have a chilling effect on reporting child abuse. Plaintiff's parents have already testified that they reported the incident to DCS. (*See* Mot. Ex. 02, Father Doe Dep. at 190:9–11 (Mr. Presnell: "Did you report the fieldhouse incident to the Department of Children's Services?" Father Doe: "I did.")). There will be no chilling effect here because the reporter willingly disclosed his identity to the Board. *See Creger*, 2022 WL 4474160 at *6 (finding that

concerns about a chilling effect were mitigated where reporter's identity was willingly disclosed in the public record). Moreover, there is a protective order in place in this case that allows a nonparty to designate any documents it produces as confidential. (Dkt. 36 ¶ 9). This prohibits anyone from disclosing those materials outside of this lawsuit, assuaging any fears that child abuse reporters may be chilled by being "outed." (*Id.* ¶ 9). *See Farley*, 952 F. Supp. 1240 (finding that existence of protective order addressed fears of chilling effect because violation of the protective order was grounds for contempt). The protective order, as well as Father Doe's willingness to identify himself as the reporter, favor disclosure of the DCS records.

The third *Farley* factor likewise supports disclosure.[1] DCS has not claimed that disclosure would impede its investigations because it would not. (Mot. Ex. 06, DCS Objection Letter); *see Farley*, 952 F. Supp. at 1240 ("It has not been (nor may it be) claimed that the production of the Plaintiff's DCS file has interfered with or hampered the conduct of investigations by agency officials."). Even if DCS had claimed this, the protective order prevents the requested documents from being disseminated beyond this lawsuit. Further, the very statutes that DCS relies on to prevent disclosure allow DCS to disclose records in certain circumstances. *See* Tenn. Code Ann. §§ 37-1-409(c)–(e); 37-1-612(c)–(g). These exemptions belie any argument from DCS that any disclosure *per se* impedes investigations. Indeed, at times, DCS records can be disclosed. Thus, this factor also weighs in the Board's favor.

The Court here should find, as courts in this District have consistently held, that the *Farley* factors weigh in favor of disclosure of the requested DCS records. In similar circumstances, the federal discovery rules that govern federal-question cases trumped state

---

[1] The fourth *Farley* factor—the extent to which state authorities have waived any privileges—is not applicable here.

confidentiality laws, and the Court should hold the same here. Accordingly, this Court should compel DCS to produce the subpoenaed information.

## III. CONCLUSION

For these reasons, the Board respectfully requests that the Court grant the Board's Motion and compel DCS to produce unredacted records, under the governing protective order, in response to the Board's subpoena.

Respectfully submitted,

*s/ E. Todd Presnell*
E. Todd Presnell (BPR #17521)
Casey L. Miller (BPR #33952)
Tara S. Sarosiek (BPR #34006)
Ocasha Musah (BPR #39224)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203-0025
Tel.: (615) 252-2355
Fax: (615) 252-6355
tpresnell@bradley.com
cmiller@bradley.com
tsarosiek@bradley.com
omusah@bradley.com

*Attorneys for Defendant, Sumner County Board of Education*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF system on the following:

Hayley H. Baker
HB ADVOCATES PLLC
3820 Charlotte Avenue, Suite 146-24
Nashville, Tennessee 37209

Justin S. Gilbert
GILBERT LAW, PLC
100 W. Martin Luther King Blvd., Suite 501
Chattanooga, Tennessee 37402

*Attorney for Plaintiff*

I further certify that a copy of the foregoing was served via mail and email on DCS on the following:

Katherine P. Adams
Human Services Division
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN
37202
Katherine.adams@ag.tn.gov


on this 17th day of May.

                                                      *s/ E. Todd Presnell*
                                                      E. Todd Presnell