UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| MOTHER DOE and FATHER DOE, on behalf of JOHN DOE, their minor child; | ) ) ) |
| Plaintiffs, | ) ) Case No.: 3:23-CV-00498 |
| v. | ) ) Judge Campbell ) Magistrate Judge Holmes |
| SUMNER COUNTY BOARD OF EDUCATION D/B/A SUMNER COUNTY SCHOOLS, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES' MOTION TO QUASH THE SUBPOENA DUCES TECUM AND RESPONSE IN OPPOSITION TO THE BOARD'S MOTION TO COMPEL**

**INTRODUCTION**

Defendant Sumner County Board of Education D/B/A Sumner County Schools ("the Board" or "Defendant") issued a subpoena duces tecum to the Tennessee Department of Children's Services ("the Department" or "DCS") that requests "any and all unredacted records" relating to John Doe.[1] (See D.E. 59-4.) The Department objected to production pursuant to Fed. R. Civ. P. 45(d)(2)(B), and the Board has now moved to compel compliance. (D.E. 59, D.E. 60.) Accordingly, the Department, the interested non-party to the above-named action, moves to quash the Board's subpoena duces tecum pursuant to Fed. R. Civ. P. 45(d)(3)(iii) and asks the Court to deny the Board's motion to compel.

---

[1] The Department will refer to the minor child as John Doe in accordance with the Board's motion and confidentiality concerns.

1

# ARGUMENT

The Board has subpoenaed from the Department "[a]ny and all unredacted records relating to [John Doe], including, but not limited to, communications, audio and/or video recordings, memoranda, interviews, evaluations, statements, medical records, psychiatric and psychological reports and/or records, tests, testing results, correspondence, notes, reports, summaries, transcripts, incident reports, photographs, and all written or graphic data prepared, kept, made, or maintained in your possession, custody, or control that pertain to [John Doe]." (See D.E. 59-4.) The Board avers that this information is relevant to the underlying lawsuit, in which a student has sued the Board for an incident that occurred on school property and for the Board's response to this incident. (D.E. 60, 2-4.) The Board further states that records of the Department's investigation into this incident are critical to its defenses. (D.E. 60, 3-4.) The Department maintains that, under the *Farley* factors, production should not be ordered, as these records are protected from disclosure by Tenn. Code Ann. §§ 37-1-409, 37-1-612, and 37-5-107 and are irrelevant to this litigation.

To begin, a few preliminary matters. Defendant asserts that a protective order already exists in this case. (D.E. 56.) If production is ordered, the Department requests that a specific protective order be entered regarding DCS's records to ensure appropriate protection because the existing order appears to outline only the process for designating a document as confidential in the discretion of counsel. There is no definitive provision determining that any DCS records produced as a result of the subpoena are confidential. Furthermore, if production is ordered, the Department also requests that it be allowed to redact any minor child's identifying information who is not John Doe, as other children's information would not be relevant to this litigation. And if the Court believes production should be ordered, the Department requests that the Court first conduct an in camera review to determine relevance and scope of disclosure given the

2

sensitive nature and tenuous connection many of the requested records may or may not have to the litigation at bar.

**State Law Privilege Outweighs the Federal Interest; the Department's Records are Confidential, and No Statutory Exception Permits Disclosure.**

Defendant asserts that the Department's records are relevant to prove their defenses to Plaintiffs' claims under Title IX claim. However, privileged material need not be disclosed. *Farley v. Farley*, 952 F. Supp. 1232, 1235- 37, 1997 WL 73204 (M.D. Tenn. 1997). And Tennessee's statutes requiring protection and non-disclosure of the Department's records "that directly or indirectly identify a child or family receiving services from the [D]epartment", particularly reports of harm or records concerning reports of child sexual abuse, "establish an evidentiary privilege that is entitled to deference under the principles of federalism and comity that are an implicit component of [Fed. R. Evid.] 501." *Farley*, 952 F. Supp. at 1238.

Tennessee law "expressly provides that, in the interest of protecting children and their parents or guardians, it is illegal for any person to disclose or otherwise make use of DCS records except under the limited circumstances prescribed by statute." *Farley*, 952 F.Supp. at 1235. Further, reports of harm and all records containing reports of child sexual abuse are confidential under Tennessee law. *See* Tenn. Code Ann. §§ 37-1-409(a)(1) and 37-1-612(a).

To balance the competing interests of permitting discovery of DCS records in federal litigation and honoring the state-law confidentiality privilege, the *Farley* court identified five factors for courts to consider:

> (1) the likelihood that disclosure of confidential information will discourage citizens from giving the government information;(2) the extent to which disclosure will thwart or undercut significant regulatory processes; (3) the extent to which state authorities have already waived the privilege that they assert; (4) the federal policies prioritizing and facilitating full development of the facts in federal litigation; and (5) the plaintiff's need for disclosure.

*Id.* at 1237-38.  Though the Department recognizes that this litigation involves federal-rights claims, on balance, the factors weigh against disclosure of the Department's records.

*Factor Four and Factor Five: The Federal Policies Prioritizing and Facilitating Full Development of the Facts in Federal Litigation and the Need for Disclosure.*

The Department recognizes that federal civil rights litigation is vitally important to our judicial system and that the discovery of relevant information—with caveats—is permitted under the federal rules.  Defendant, however, has not demonstrated that the requested DCS records are relevant or necessary to this litigation.  Of import, the *Farley* court's factor five regards the *plaintiff's* need for disclosure, not defendant's.  952 F.Supp., at 1238-39.  The Department asserts that even so, Defendant's need for disclosure is low.

The Board has not subpoenaed only the records relating to the incident.  (See D.E. 59-4.)  Instead, the subpoena requests "[a]ny and all unredacted records relating to [John Doe]."  (Id.)  The Boad has not provided a time frame or any other language limiting the records to those relating to the incident at issue in the underlying case.  The request for *any and all* of John Doe's records could include confidential information not relevant to the incident underlying the complaint, including confidential information concerning other minor children.  The request could also include the identify of any reporter of harm, which is given the highest protection under Tennessee law.  *See* Tenn. Code Ann. § 37-1-409(a)(1); *see also* § 37-1-409(a)(2) ("Except as may be ordered by the juvenile court as herein provided, the name of any person reporting child abuse shall not be released to any person, other than the employees of the department or other child protection team members responsible for child protective services, the abuse registry, or the appropriate district attorney general upon subpoena of the Tennessee bureau of investigation, without the written consent of the person reporting.  Such person's identity shall be irrelevant to any civil proceeding

4

and shall, therefore, not be subject to disclosure by order of any court.") (emphasis added).[2] The subpoena as written is overbroad.

The Board, however, asserts that DCS's subpoenaed records are relevant for four reasons: the records will shed light on: (1) John Doe's statements about the incident; (2) Hendersonville High School ("HHS") employees' statements and training; and (3) Father Doe's and Mother Doe's statements; and (4) DCS's alleged finding that the Board was not at fault for the incident. (D.E. 60, 6-7.)

Federal R. Civ. P. 26(b)(1) allows for discovery of "any *nonprivileged* matter that is relevant to any party's claim or defense and *proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, *the parties' relative access to relevant information*, the parties' resources, the *importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit*." Fed. R. Civ. P. 26(b)(1) (emphasis added). In other words, relevance is not the sole consideration. And even *assuming arguendo* that the records contain relevant information, Defendant does not show how DCS's records are the only way to access the information it seeks.

The Board has several alternative discovery tools—including depositions, interrogatories, and requests of admission, see Fed. R. Civ. P. 30, 33, 36—which would not require the Department to produce statutorily-protected records. It appears Defendant has already conducted a deposition with John Doe and Father Doe and received their statements regarding the incident. (D.E. 59-1.) Mother Doe also is a party to the litigation who may be deposed and required to testify under oath

---

[2] The Department typically redacts the identity of the referent when producing records pursuant to Tenn. Code Ann. § 37-5-107(c). The subpoena, however, requests *unredacted* records. (*See* D.E. 59-4.)

about her statements. Regarding HHS employees' statements and training: the Board should have knowledge about its own employees' training and their responses to the incident. (D.E. 60, 7.) And despite the Board's assertion that a closure of DCS's investigation supports their no-fault position, (*see* D.E. 60, 7,), Defendant does not cite anything showing that DCS investigations are designed to determine compliance with or fault under Title IX. There is no reason for the Department to produce its privileged records when the Board can obtain the answers to the questions they have through other avenues. *See Hart ex rel. Hart v. Paint Valley Local Sch. Dist.*, No. C-2- 01-4, 2001 WL 1681140, at *2 (S.D. Ohio Oct. 17, 2001) ("plaintiffs have not explained why records maintained in confidence might shed light on what defendant Paint Valley Local School District knew or should have known regarding defendant").

Accordingly, Factors 4 and 5 weigh against production, and the Department's motion to quash should be granted.

*Factor One: The Likelihood that Disclosure of Confidential Information Will Discourage Citizens from Giving the Government Information.*

The disclosure of records such as these is likely to discourage citizens from reporting such harm to the state. In considering this question, the Southern District of New York concluded:

> If federal courts could routinely preempt this state law and allow the identity of mandatory reports to be released, school officials, as well as other mandatory reporters, may be less likely to come forward and report these allegations. Furthermore, it would allow plaintiffs' attorneys to use federal claims as a means of avoiding the state confidentiality laws that make such information otherwise privileged. Such a chilling effect on the reporting of suspected child abuse would only serve to endanger the children that these laws were specifically designed to protect, and could result in litigation that abused the courts as well as the reporters.

*DeLeon v. Putnam Valley Bd. of Educ.*, 228 F.R.D. 213, 213, 221 (S.D.N.Y. 2005). And this analysis applies equally to Tennessee. Tennessee has a strong interest in protecting its children, which can only be fully served if observers of possible abuse or neglect are permitted to report

6

their concerns to the Department without fear of their names being released. *Cf.* Tenn. Code Ann. § 37-1-403 (providing a list of persons required to report suspected abuse or harm). If the Department must routinely disclose unredacted records, Tennessee's confidentiality statutes are eviscerated. Indeed, *Farley* itself recognized that Tennessee's "interest served by its privilege doctrine is compelling." 952 F.Supp. at 1237. The court noted that "[t]he confidentiality provisions . . . have been construed by the Tennessee courts to block discovery in civil actions and are clearly designed to protect the anonymity of reporters, victims, and perpetrators of child abuse." *Id.* at 1238-39.

The Board asserts that it already knows the identity of the reporter of harm, and therefore this factor favors production, citing *Creger v. Tucker*, No. 3:21-cv-00088, 2022 WL 4474160 (M.D. Tenn. Sept. 26, 2022). But even in *Creger* this Court permitted that "the identifying information of any other reporters and any minors not subject to the subpoena shall be redacted." *Creger*, 2022 WL 4474160, at *6. The Department asks that, if production is ordered, the same redactions be allowed here as applicable.

Accordingly, Factor 1 does not wholly support Defendant's assertions.

*Factor Two: The Extent to Which Disclosure Will Thwart or Undercut Significant Regulatory Processes.*

Defendant asserts that this factor weighs in its favor because the state law confidentiality statutes sometimes permit disclosure, so "any disclosure [cannot] *per se* impede[] investigations." (D.E. 60, 8.) The Department has not asserted that any disclosure *per se* impedes investigations and acknowledges that state law permits disclosure of certain records to certain persons and entities. But Defendant points to no state law exception that would entitle *the Board* to disclosure of DCS records for this lawsuit. Indeed, none exists. *See* Tenn. Code Ann. §§ 37-1-409(c), 37-1-612(c), 37-5-107(b) & (c).

7

In *Farley*, the court acknowledged that "[t]he investigation and resolution of incidents of child abuse is one of the most important regulatory objectives that a state may undertake." *Id.* at 1240. The Department was a party to the litigation in *Farley*, and the court explained "Tennessee law may not be invoked as a shield with which to block scrutiny of governmental practices." *Id.* At 1240. In analyzing this factor, the *Farley* court reasoned that DCS could not expect that its own actions would be "insulated from outside view" but rather could expect that its actions "will be examined and possibly redressed by the targets of their investigations." *Id.* at 1240-41. However, that is not the case here. The Department is not a party to this action. Thus, the Department may invoke Tennessee law to maintain the confidentiality of its records without risk of that invocation functioning as a "shield" to protect itself. *See Farley*, 952 F. Supp. at 1238 (reasoning that an "agency should not be permitted to use a privilege designed to ensure the welfare of those it governs when it is in possession of relevant evidence and is itself the target."). *Farley*'s discussion of using confidentiality as a shield to block scrutiny of government practices should be read in context: that the State cannot use its own statutes as a shield for *itself*. It is not. The Attorney General and the Department do not represent local or municipal governmental interests.

So, invocation of Tennessee's statutory privilege here would effectuate the purpose of the statutes—"the protection of the privacy of those who are not likely to be parties to a federal civil rights suit." *Id.* at 1238. The Department asserts that this factor can be understood as relating to factor one's chilling effect. If "any and all" confidential records are routinely disclosed without even allowing for appropriate redactions, the force and protection of Tennessee's confidentiality statutes are eroded, and it is not implausible that that the investigation, resolution, and reporting of child abuse could suffer chilling effects.

8

Additionally, it is important to note that minor subjects of DCS investigations and their parents/guardians are not automatically entitled to DCS records either—those individuals do not own DCS records, rather DCS is the custodian and owner of its records. The Board cites two orders from the Sumner County Circuit Court, which ruled that DCS must produce records pursuant to Tenn. Code Ann. § 37-1-612(c)(6). (See D.E. 59-5.) But for a minor or his parents to receive DCS records, they must prove that they fall into an enumerated statutory exception. *See* Tenn. Code Ann. § 37-5-107(c)(7) ("Upon written request, records to any person who is the subject of a report made to the department, or to the person's parent or legal guardian if the person is a minor and the parent or legal guardian *is not the alleged perpetrator of or in any way responsible for the child abuse*, child neglect or child sexual abuse against the child whose records are being requested.") (emphasis added); *see also* Tenn. Code Ann. 37-1-612(c)(6) ("*An attorney or next friend who is authorized to act on behalf of the child*, who is the subject of the records, for the purpose of recovering damages or other remedies authorized by law in a civil cause of action against the perpetrator or other person or persons who may be responsible for the actions of the perpetrator."). These exceptions do not apply in this case. The Board is not acting on behalf of the child who is the subject of the records. And though the Plaintiffs may be able to obtain DCS's investigation records related to this incident, they have not attempted to do so here. And DCS is the holder of its records, not Plaintiffs. *See e.g.,* Tenn. Code Ann. § 37-5-107 (outlining when *the Department* may release records).

*Factor Three: The Extent to Which the State Authorities Have Already Waived the Privilege that They Assert.*

Defendant asserts that this factor is not applicable, (D.E. 60, 8 n.1). But it is and it weighs against production because Tennessee has not waived any claims to the confidentiality of its records. *Farley*, 952 F.Supp. at 1241-42. Tennessee Code Ann. §§ 37-1-107, 37-1-409, and 37-1-

9

612 provide for the use of the Department's records only in very narrow circumstances and every effort is made to protect these records. No exception exists in Tennessee law for disclosure to the Board in this case, and Defendant has not presented a particular necessity for these documents showing that it cannot obtain the information it seeks from the other parties or its own employees.

Thus, on balance, the *Farley* factors weigh against disclosure. However, if this Court determines that disclosure is required, the Department respectfully asks this Court to enter a protective order providing that the Department's records remain confidential and may not be used outside of this litigation. The Department is happy to provide a sample protective order to that effect. In the event of disclosure, the Department further requests to redact its records in compliance with state law—namely, that the Department may redact any identifying information regarding reporter(s) of harm and other minor children who are not parties to this litigation.

## CONCLUSION

For the reasons stated above, the Board's motion to compel the Department's compliance with the subpoena should be denied and the subpoena duces tecum should be quashed.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

*/s/ Kathryn A. Ahillen*
KATHRYN A. AHILLEN (BPR #031958)
Deputy Attorney General

*/s/ Katherine P. Adams*
KATHERINE P. ADAMS (BPR #039501)
Assistant Attorney General
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-7630; (615) 532-7359
kathryn.ahillen@ag.tn.gov
katherine.adams@ag.tn.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion and response has been served on the following counsel of record through the Electronic Filing System on this 7th day of June 2024:

E. Todd Presnell
Casey L. Miller
Tara S. Sarosiek
Ocasha Musah
Bradley Arant Boult Cummings, LLP
1221 Broadway, Ste 2400
Nashville, Tennessee 37203-0025
tpresnell@bradley.com
cmiller@bradley.com
tsarosiek@bradley.com
omusah@bradley.com

Haley H. Baker
HB Advocates PLLC
3820 Charlotte Ave., Ste 146-24
Nashville, TN 37209
hbaker@hb-advocates.com

Justin S. Gilbert
Gilbert Law, PLC
100 W. Martin Luther King Blvd., Ste 501
Chattanooga, TN 37402
justin@schoolandworklaw.com

*Kathryn A. Ahillen*
KATHRYN A. AHILLEN
Deputy Attorney General

11

Case 3:23-cv-00498    Document 65    Filed 06/07/24    Page 11 of 11 PageID #: 792